IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESSICA M. HARMS,                           Case No. 6:13-cv-01585-AA
                                                      OPINION AND ORDER
            Plaintiff,

      v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

            Defendant.
_____

Kathryn Tassinari
Robert A. Baron
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, OR 97401
      Attorneys for plaintiff

S. Amanda Marshall
Adrian L. Brown
Ronald K. Silver
U.S. Attorney's Office
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

Richard A. Morris
Courtney M. Garcia
Social Security Administration
Office of General Counsel
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104
      Attorneys for defendant

AIKEN, Chief Judge:

Plaintiff Jessica Harms brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Title XVI supplemental security income ("SSI"). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

In November 2011, plaintiff protectively applied for SSI. Tr. 12, 194-97. Her application was denied initially and upon reconsideration. Tr. 12, 126-30, 134-36. On November 16, 2012, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 12, 79-102. On May 14, 2013, a supplemental hearing was held before a different ALJ, wherein plaintiff was again represented by counsel and testified, as did a VE and medical expert ("ME"). Tr. 24-78. On May 30, 2013, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 12-19. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-3.

## STATEMENT OF FACTS

Born on January 16, 1990, plaintiff was 17 years old on the alleged onset date of disability and 23 years old at the time of

Page 2 - OPINION AND ORDER

the second hearing. Tr. 52, 97, 215. Plaintiff dropped out of high school during her senior year but later earned a GED. Tr. 581. She attended community college and a culinary arts school for a "short amount of time." Tr. 68, 581. She previously worked as a retail associate, cleaner, and telemarketer. Tr. 92, 236, 581. Plaintiff alleges disability as of July 15, 2007, due to anxiety, bi-polar disorder, mood disorder, and depression. Tr. 54, 91, 334, 584-85.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the Commissioner considers whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 416.920(4)(i). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(4)(ii). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(4)(iii). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 416.920(4)(iv).

If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national and local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 416.920(4)(v). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(4)(v).

## THE ALJ'S FINDINGS

At step one of the five-step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 14. At step two, the ALJ determined that plaintiff had the following severe impairments: post traumatic stress disorder, anxiety disorder, personality disorder, and history of substance abuse. Id. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listings. Id.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels," but with the following non-exertional limitations: only tasks involving "simple instructions," "no contact with the general public," "no more than superficial

Page 5 - OPINION AND ORDER

contact with co-workers," and "no more than occasional contact with supervisors." Tr. 15.

At step four, the ALJ found that plaintiff had "no past relevant work." Tr. 18. At step five, the ALJ determined that plaintiff could perform jobs existing in significant numbers in the national and local economy despite her impairments, such as janitor, auto detailer, and budder. Tr. 18-19. As such, the ALJ concluded that plaintiff was not disabled under the Act. Tr. 19.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) finding her not credible; (2) rejecting the lay witness testimony of Cynthia Harms; (3) failing to include all of the limitations assessed by Peter LeBray, Ph.D., and James Bruce, Ph.D., in the RFC; and (4) relying on invalid VE testimony at step five.

## I.    Plaintiff's Credibility

Plaintiff asserts that the ALJ failed to articulate a clear and convincing reason, supported by substantial evidence, for rejecting her subjective symptom statements. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)

Page 6 - OPINION AND ORDER

(citation omitted).

A general assertion that the claimant is not credible is insufficient; the ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At both hearings, plaintiff testified that she was unable to work because her depression, anxiety, and unpredictable behavior made it "very difficult" to interact appropriately with unfamiliar people and places. Tr. 54, 91. She specified that "issues with supervision and taking criticism" send her "over the edge" and cause her to "lash out in anger" or "walk off the job." Tr. 53, 55, 61, 92. According to plaintiff, she "can't go to new stores[,] buildings," or other unfamiliar places, "let alone [to a] job [where she must] communicate" with unfamiliar people or "confront . . . authority figures." Tr. 54-55. Plaintiff also stated that, when she feels "crunched for time," her anxiety interferes with her ability to concentrate, follow instructions, and complete simple

and routine tasks. Tr. 60, 64, 93.

After summarizing her hearing testimony, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause some degree of symptoms, but her statements concerning the extent of these symptoms were not fully credible due to her inconsistent activities of daily living and the lack of corroborating objective medical evidence. Tr. 15-16.

Notably, the ALJ found that plaintiff's credibility was impaired by her daily activities. Tr. 16. Daily activities may serve as a basis for discrediting a claimant where they "are transferable to a work setting" or "contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012). Substantial evidence supports the ALJ's conclusion in the case at bar. The record before the Court demonstrates that plaintiff independently engaged in a wide range of daily activities. Indeed, plaintiff acknowledges that "she retains the ability [to] perform many tasks." Pl.'s Opening Br. 16. For instance, plaintiff "takes care of all of her [dog's] daily needs," such that she typically spends much of her day walking and exercising the dog outdoors. Tr. 56, 58. She also "take[s] care of [her friend's three] kids," which includes driving the children to school "every day" and shopping for their meals independently. Tr. 57, 59, 335. Additionally, plaintiff cooks, takes out the trash, washes dishes, cleans, and does laundry and yard work. Tr. 57, 91,

222, 335. She goes outside and talks with others daily. Tr. 221-22; see also Tr. 335 (Gale Smolen, M.D., noting plaintiff's report that she "has six close friends whom she sees or hears from daily"). As for hobbies, plaintiff reads novels, writes, listens to music, watches television and movies, and uses the computer to visit internet sites such as Youtube, Facebook, and Craigslist. Tr. 58, 222, 335. These activities both belie plaintiff's hearing statements and evince an ability to engage in sustained work activity with appropriate non-exertional limitations.

Further, the ALJ found that the opinions of Drs. LeBray and Smolen failed to support plaintiff's subjective symptom testimony regarding her ability to focus. Tr. 17-18. Although "testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining" the claimant's credibility. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Here, Dr. LeBray opined that, despite her depression and anxiety, plaintiff was "able to understand, learn and perform a wide range of mental related work-like tasks and routines." Tr. 585. Dr. Smolen likewise determined that plaintiff can "remember and understand with no impairment," and "concentrate and attend with mild impairment." Tr. 334. This medical evidence contradicts plaintiff's statement at the hearing that she is unable to concentrate, follow instructions, and complete simple and routine tasks.

Page 9 - OPINION AND ORDER

Thus, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom testimony. The ALJ's credibility finding is affirmed.

II. <u>Lay Witness Testimony</u>

Plaintiff next contends that the ALJ wrongfully rejected the lay testimony of her mother, Ms. Harms. Lay testimony regarding a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. <u>Molina</u>, 674 F.3d at 1114 (citation omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. <u>Id.</u> (citation and internal quotation omitted).

On December 2, 2011, Ms. Harms completed a Third-Party Adult Function Report, in which she asserted that plaintiff cannot "complete everyday tasks," "work well with others," or "hold a job" because "she is unsafe to herself and to others." Tr. 235. She also reported that plaintiff helps with chores, goes outside, shops independently, text messages, is on the computer "all the time," and can follow written and spoken instructions "if she wants to." Tr. 228-31. In a letter dated February 17, 2013, Ms. Harms reiterated that her daughter is "unsafe" and that she was "fearful" that plaintiff might hurt her or "someone else at any given moment." Tr. 276.

The ALJ gave "only some weight" to Ms. Harms' third-party statements because plaintiff "moved back in with her mother a week

Page 10 - OPINION AND ORDER

before the hearing." Tr. 16. As such, plaintiff is correct that, because not all of the limitations described by Ms. Harms are reflected in the RFC, the ALJ rejected Ms. Harms' testimony without explicitly providing a reason for doing so.

Even assuming, however, that the ALJ erred in this regard, such error was harmless. See Molina, 674 F.3d at 1122 ("an ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims") (citation and internal quotations omitted). Ms. Harms' testimony is substantively similar to plaintiff's; her Third-Party Adult Function Report was completed one day after plaintiff's Adult Function Report and uses virtually identical language. Compare Tr. 218-25, with Tr. 226-35. As discussed above, the ALJ provided clear and convincing reasons, supported by substantial evidence, to reject plaintiff's credibility, and these reasons are equally applicable to the lay witness statements. Critically, plaintiff's activities of daily living, as well as the lack of corroborating objective findings, erode the credibility of both her and her mother's testimony. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (rejecting lay testimony on same basis as the claimant's discredited subjective reports); see also Molina, 674 F.3d at 1122. The ALJ's assessment of the lay witness testimony is upheld.

Page 11 - OPINION AND ORDER

III. <u>Medical Opinion Evidence</u>

Plaintiff argues that the ALJ failed to include all of the limitations assessed by Drs. LeBray and Bruce in the RFC, despite affording weight to their opinions. Specifically, plaintiff contends that the ALJ's RFC is deficient because it "failed to address Dr. LeBray's specific comments regarding the need for a supervisor without a harsh and critical style," and Dr. Bruce's testimony regarding her "need for supportive supervision." Pl.'s Opening Br. 17. To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons for doing so. <u>Bayliss v. Barnhart</u>, 427 F.3d, 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. <u>Id.</u>

A. <u>Dr. LeBray</u>

In June 2012, Dr. LeBray conducted a one-time psychological evaluation of plaintiff in conjunction with her application to obtain state-funded vocational and mental health services. Tr. 579-88. Based on a clinical interview, the medical record, and psychological testing, Dr. LeBray diagnosed plaintiff with a mood disorder. Tr. 579-84. He also listed social phobia and cannabis abuse as rule out possibilities. Tr. 584. He concluded that plaintiff had no impairment in her ability to understand, remember, and complete tasks, and only moderate impairment in social

functioning. Tr. 585. In the section of the form that solicited "[s]pecific [r]ecommendations [for] [v]ocational [t]raining," Dr. LeBray listed "supportive feedback always (avoid harsh, highly critical style)" and "solitary learning setting[s]." Tr. 587.

The ALJ gave "significant weight" to Dr. LeBray's report. Tr. 18. In the corresponding RFC, the ALJ restricted plaintiff to "simple work with limited social contact (no contact with the general public, no more than superficial contact with co-workers, and no more than occasional contact with supervisors)." Id.

The Court finds that the ALJ adequately accounted for Dr. LeBray's concrete functional limitations in the RFC. Initially, Dr. LeBray's recommendation that plaintiff would benefit from "supportive feedback" is not a work-related limitation of function that must be reflected in the RFC. See SSR 96-8p, available at 1996 WL 374184; see also Boyer v. Colvin, 2013 WL 3333060, *8 (D.Or. July 1, 2013) (affirming the ALJ's decision under analogous circumstances). In other words, the fact that Dr. LeBray "advised [certain forms of feedback] in all vocational training or schooling programs" is inadequate to demonstrate the inability to perform work-related activities on a sustained basis under the Act. Tr. 587.

In any event, contrary to plaintiff's assertion, the ALJ did not reject certain facets of Dr. LeBray's opinion. "[I]t is the responsibility of the ALJ, not the claimant's physician, to

determine [the RFC] and the ALJ's findings of RFC need not correspond precisely to any physician's findings." Davis v. Astrue, 2012 WL 4005553, *9 (D.Or. June 12, 2012), adopted by 2012 WL 3614310 (D.Or. Aug. 21, 2012) (citations and internal quotations omitted); see also Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (ALJ is responsible for resolving ambiguities in the record and translating the claimant's impairments into concrete functional limitations). The ALJ's finding that Dr. LeBray's assessment was consistent with a RFC for "simple work," with "no public contact," and only superficial or occasional contact with coworkers and supervisors was rational, such that it must be upheld. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. 2004). The ALJ's decision is affirmed as to this issue.

B. Dr. Bruce

Dr. Bruce testified at the second hearing as a ME. Tr. 28-49. Dr. Bruce stated that, while he never examined or treated plaintiff, he had reviewed the medical evidence and was capable of rendering an opinion. Tr. 29. Dr. Bruce remarked that plaintiff's limitations dated back to July 2007; since then, she had been diagnosed and treated for affective, personality, and anxiety disorders, as well as for substance abuse, although he opined that the evidence did not "particularly support any diagnosis other than borderline personality disorder." Tr. 30, 33, 37. Dr. Bruce indicated that plaintiff's primary functioning issue was with her

Page 14 - OPINION AND ORDER

"ongoing relationships with others." Tr. 42. He testified that plaintiff had "no problem" with activities of daily living and no more than moderate limitation in social functioning or concentration, persistence, and pace. Tr. 35-36. Dr. Bruce therefore concurred with the ALJ's RFC, although he agreed with Dr. Smolen that plaintiff would "not take criticism very well." Tr. 36, 43. He stated that, consistent with Dr. LeBray's report, plaintiff would work best in a setting with a gentle supervisor. Tr. 45, 48-49.

The ALJ gave "significant weight" to Dr. Bruce's testimony. Tr. 17. Here, the ALJ reasonably resolved that restricting plaintiff to simple work with occasional contact with supervisors, no contact with the general public, and only superficial contact with co-workers was sufficient to account for Dr. Bruce's opinion, especially in light of the fact that unskilled "jobs ordinarily involve dealing primarily with objects." SSR 85-15, available at 1985 WL 56857. Moreover, this limitation is consistent with the other evidence of record, including plaintiff's own statements that she interacts with friends, family, and members of the public on a daily basis. Tr. 57, 59, 221-22, 335. Plaintiff also does not identify any limitations beyond those already included in the RFC. See McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011) (claimant bears the burden of establishing how an alleged error is harmful).

Further, as with Dr. LeBray, the Court finds that Dr. Bruce's

recommendation that plaintiff would benefit from a gentle supervisor is not a work-related limitation of function that need be reflected in the RFC. Although Dr. Bruce agreed with Dr. LeBray that a gentle supervisor would "certainly [be] advisable," he also stated that he was "not sure how necessary [that] would be." Tr. 45. Dr. Bruce's discussion is clearly phrased in terms of "ideal" working conditions rather than, as plaintiff contends, articulating the most she can do despite her limitations. Tr. 48-49. The ALJ's assessment of the medical opinion evidence is affirmed.

IV.   Step Five Finding

Finally, plaintiff argues the ALJ formulated an incomplete RFC, thereby rendering the VE's testimony invalid, by failing to include: (1) all of the limitations described in her testimony, as well as the testimony of Ms. Harms, Dr. LeBray, and Dr. Bruce; and (2) a limitation to account for her moderate impairment in concentration, persistence, or pace.

A. Incomplete RFC

As discussed above, the ALJ properly evaluated plaintiff's testimony, Ms. Harms' testimony, and the medical opinions of Drs. LeBray and Bruce. Plaintiff's argument, which is contingent upon a finding of harmful error in regard to the aforementioned issues, is without merit. Bayliss, 427 F.3d at 1217-18; Stubbs-Danielson, 539 F.3d at 1175-76. The ALJ's RFC is upheld in this regard.

B. Moderate Limitation in Concentration, Persistence, or Pace

"The term 'moderate' does not necessarily indicate a degree of limitation that must be expressly reflected in the RFC assessment [since it] does not inherently translate to a concrete functional limitation." Brink v. Astrue, 2013 WL 1785803, *5 (D.Or. Apr. 24, 2013). Rather, the "RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." Id. This more detailed assessment is based on all of the relevant evidence of record, including "'statements about what you can still do made by nonexamining physicians and psychologists.'" Id. (quoting 20 C.F.R. § 416.913(c)); see also SSR 96-8p, available at 1996 WL 374184.

The medical and other evidence of record supports a finding that plaintiff is capable of performing "simple work," with limited social interaction, despite any moderate limitation in concentration, persistence, or pace. As noted above, plaintiff drives everyday, shops independently, and helps with household chores and yard work. Tr. 57, 59. She also reads novels, writes music, visits public places, and spends several hours each day engaging with others in person and over social media sites. Tr. 58-59, 221, 222, 335. Moreover, Dr. Smolen opined that plaintiff was "able to remember and understand with no impairment," "concentrate and attend with mild impairment," and "follow a three step command." Tr. 334. She assessed plaintiff's thought processes as

Page 17 - OPINION AND ORDER

"logical and goal directed," and her immediate and recent memory were fully intact. Id. Similarly, Dr. LeBray observed that plaintiff's thoughts were organized and reflected an average intellect, and her concentration, persistence, and pace were "adequate over [the] 3+ hour" examination. Tr. 582-83. While Dr. Bruce testified that plaintiff had moderate problems in concentration, persistence, and pace, he nonetheless opined that she could perform work consistent with the RFC. Tr. 35-49.

In sum, plaintiff's ability to care for her own and other people's daily needs, as well as attend to a variety of tasks and hobbies, reinforces the medical evaluations and the ALJ's RFC. See Sabin v. Astrue, 337 Fed.Appx. 617, 620-21 (9th Cir. 2009) (ALJ did not err in determining that, despite moderate difficulties in concentration, persistence, or pace, claimant could perform simple tasks). The ALJ's RFC assessment and step five finding are affirmed.

## CONCLUSION

The Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.
Dated this ___11th___ day of December 2014.

_____
Ann Aiken
United States District Judge

Page 18 - OPINION AND ORDER